UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEIGH CASSELL,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

_____/

Case No. 2:21-cv-11348
District Judge George Caram Steeh
Magistrate Judge Anthony P. Patti

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 17), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 18) and AFFIRM THE COMMISSIONER'S DECISION**

**I.**     **RECOMMENDATION**: For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 17), **GRANT** Defendant's motion for summary judgment (ECF No. 18), and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

Plaintiff Leigh Cassell brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for Disability Insurance (DI) benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (ECF No. 17), the Commissioner's cross-motion for summary judgment (ECF No. 18), and the administrative record (ECF No. 13).[1]

### A.   Background and Administrative History

#### 1.   Prior claims

Plaintiff filed prior claims for disability insurance benefits (DIB) and Supplemental Security Income (SSI) on June 10, 2014, and October 28, 2013. (*See* ECF No. 13, PageID.1392, 1446.) A hearing regarding these prior claims was held on August 25, 2015, and on October 30, 2015, Administrative Law Judge (ALJ) Richard E. Guida found that Plaintiff was not disabled within the meaning of the Social Security Act. (ECF No. 13, PageID.1443-1458.)

#### 2.   Current claim and appeal

In her April 9, 2018 application for DIB, Plaintiff alleges her disability began on June 3, 2013, two days after the onset date alleged in her prior applications, at the age of 42. (ECF No. 13, PageID.1564-1567.) In her disability report, she lists fibromyalgia, IBS, hearing issues, back pain, chronic paroxysmal hemicrania – intractable, gerd, urinary issues, acid reflux, carpal tunnel, and

---

[1] The record was originally filed at ECF No. 12, but was re-filed as one document at ECF No. 13.

2

depression as limiting her ability to work. (ECF No. 13, PageID.1587.) Her application was denied on October 12, 2018. (ECF No. 13, PageID.1483-1490.)

Plaintiff requested a hearing by an ALJ. (ECF No. 13, PageID.1495-1496.) ALJ Earl Ashford held a hearing on July 22, 2019, at which Plaintiff and a vocational expert (VE), Charles McBee, testified. (ECF No. 13, PageID.1416-1442.) On September 6, 2019, ALJ Ashford issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act from June 3, 2013 through December 31, 2018, Plaintiff's date last insured (DLI). (ECF No. 13, PageID.1389-1412.)[2]

---

[2] In so doing, the ALJ stated:

> When the claimant filed the current application, she alleged an onset of disability within the previously adjudicated period, which would be an implied request that the determination concerning her prior application be reopened and revised. The undersigned does not find a basis for reopening the claimant's prior Title II or Title XVI application (20 CFR 404.988 and 20 CFR 416.1488). Social Security Ruling 91-5p was also considered and does not apply in this case.
>
> In accordance with *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), the undersigned is bound by the previous findings and determinations, including any findings of fact regarding the claimant's severe impairments unless there is new and material evidence or a showing of "changed circumstances" relating to a determination of the present claim. After careful consideration of all the evidence, the undersigned finds that new and material evidence has been submitted that supports a material change in the assessment of the claimant's severe impairments, non-severe impairments, and residual functional capacity assessment. Therefore, due to this new and material evidence, AR 98-4 is not applicable. However, no new

3

Plaintiff submitted a request for review of the hearing decision/order. (ECF No. 13, PageID.1551-1554.) However, on April 9, 2021, the Appeals Council denied Plaintiff's request for review. (ECF No. 13, PageID.1383-1388.) Thus, ALJ Ashford's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on June 9, 2021. (ECF No. 1.)

### B.     Plaintiff's Medical History

The administrative record contains approximately 1048 pages of medical records, which were available to the ALJ at the time of his September 6, 2019 decision. (ECF No. 13, PageID.1664-2712 [Exhibits B1F-B19F]).) These materials will be discussed in detail, as necessary, below.

### C.     The Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity from June 3, 2013, her alleged onset date, through December 31, 2018, her DLI. (ECF No. 13, PageID.1395.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: "major depressive disorder; anxiety/situation type, phobia; degenerative disc

---

information was submitted with regard to the claimant's past relevant work findings. Thus, AR 98-3 is binding on this decision.

(ECF No. 13, PageID.1392.)

disease/lumbago/sciatica/dorsalgia; migraines/chronic paroxysmal hemicranias; and history of right ear chronic otitis media, status post typanomastoidectomy/bilateral sensorineural hearing loss/bilateral Meniere's disease." (ECF No. 13, PageID.1395-1396.) At **Step 3**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (ECF No. 13, PageID.1396-1398.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[3] and determined that Plaintiff had the RFC:

> to perform light work . . . except: Allowed to sit or stand alternating position for one or two minutes in the immediate vicinity of the workstation, no more frequently than every 30 minutes. Postural limitation of no climbing of ladders, ropes, or scaffolds. Occasional climbing of ramps and stairs. Occasional stooping, kneeling, crouching and crawling. Frequent use of the bilateral lower extremities for operation of foot controls. Manipulative limitation of frequent use of the bilateral upper extremities for reaching, handling, and fingering. Environmental limitation to avoid concentrated exposure to hazards, such as dangerous moving machinery and unprotected heights. No jobs and loud work environments such as heavy traffic noise levels. Work limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work related decisions, with few if any work place changes.

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

5

(ECF No. 13, PageID.1398-1405.) At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (ECF No. 13, PageID.1405.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as such as merchandise marker, sorter, and office helper. (ECF No. 13, PageID.1406-1407.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 3, 2013, the alleged onset date, through December 31, 2018, her DLI. (ECF No. 13, PageID.1407.)

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable

6

mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**E.     Analysis**

In a woefully inadequate brief of conclusory and undeveloped arguments, which has become a concerning pattern for Plaintiff's counsel,[4] Plaintiff asserts that the ALJ's decision is contrary to the law and unsupported by substantial evidence.  (ECF No. 17, PageID.2747, 2770-2775.)  Specifically, she argues that the ALJ: (1) erred at Step 2 by failing to classify her fibromyalgia and centralized pain syndrome as medically determinable impairments (MDIs); (2) failed to consider her carpal tunnel syndrome in combination with her other medical conditions; and (3) improperly assessed her subjective symptoms.  (ECF No. 17, PageID.2770-2775.)  The Commissioner opposes Plaintiff's motion, arguing that Plaintiff has waived or forfeited her arguments, and that substantial evidence supports the ALJ's decision.  For the reasons that follow, I agree with the Commissioner.

---

[4] Indeed, I and others in this Court have repeatedly admonished Plaintiff's counsel for his severely inadequate briefing and advocacy. *See Aun v. Comm'r of Soc. Sec.*, No. 3:19-cv-11143, 2020 WL 5223323, at *3-4 (E.D. Mich. Aug. 3, 2020), *report and recommendation adopted*, 2020 WL 5209366 (E.D. Mich. Aug. 31, 2020) (collecting cases).  Recently, Judge Berg ordered that Plaintiff's counsel, Patrick Carmody, show cause as to why he should not be sanctioned for his conduct in a different Social Security case, and Mr. Carmody promised to abstain from accepting any further Social Security appeals in federal court.  The present case and one other are the last two cases currently pending where Mr. Carmody appears as the attorney of record.  (*See* 2:20-cv-12819, ECF No. 27.)

## 1. The Court should find that Plaintiff has failed to meet her burden of demonstrating harmful error at Step 2

Plaintiff first argues that the ALJ should have found her fibromyalgia and centralized pain disorder to be MDIs at Step 2. (ECF No. 17, PageID.2771-2773.)

An MDI is an impairment that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. Under Social Security Ruling (SSR) 12-2p, in addition to trigger point testing, an ALJ "may find that a person has an MDI of [fibromyalgia in accordance with the 2010 ACR Preliminary Diagnostic Criteria] if he or she has all three of the following criteria":

1. A history of widespread pain (see section II.A.1.);

2. Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (see section II.A.3.).

SSR 12-2p, 2012 WL 3104869, at *3.

At Step 2, the ALJ declined to find fibromyalgia to be an MDI, stating:

> With regard to the claimant's allegations of fibromyalgia, the undersigned has considered SSR 12-2p, which instructs adjudicators how to evaluate fibromyalgia and its corresponding functional limitations. There are two sections providing criteria for a finding of fibromyalgia as a medically determinable impairment. In order to find a medically determinable impairment, each of the criteria in the

9

>first or second section must be met. Further, the evidence must be consistent with the other objective evidence of record. The first set of criteria requires a history of widespread pain, at least 11 positive bilateral tender points on examination, both above and below the waist, and evidence that other disorders that could cause the signs or symptoms were excluded. The second set of criteria are preliminary diagnostic criteria, and require a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms, and evidence that other disorders which could cause the repeated manifestation of symptoms, signs, or co-occurring conditions were excluded. The medical records from pain management stated she had "wide-spread body pain consistent with fibromyalgia;" however, no specific tests were performed to confirm that assertion. (B18F/42). Therefore, according to the criteria outlined in SSR 12-2p, the undersigned does not find that the objective findings of record support a medically determinable impairment of fibromyalgia.

(ECF No. 13, PageID.1395-1396.)

Plaintiff states that she was diagnosed with centralized pain syndrome, which doctors noted was consistent with fibromyalgia pain (ECF No. 17, PageID.2772 (citing ECF No. 13, PageID.2578)), but essentially lumps the two together for purposes of her Step 2 challenge. She then cursorily asserts, with only general citation to Exhibit B18F, which contains approximately 235 pages of medical records, and her own testimony, that she has a history of widespread pain and six or more fibromyalgia symptoms, signs, or co-occurring conditions. (ECF No. 17, PageID.2772-2773.) These arguments fail for several reasons.

First, Plaintiff's argument and general citation to one voluminous medical record is wholly inadequate and unworthy of comprehensive assessment by the Court. "'[I]ssues adverted to in a perfunctory manner, unaccompanied by some

10

effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995) (citation omitted)). "Indeed, a court need not make a party's case by scouring the various submissions to piece together appropriate arguments." *Hayes v. Comm'r of Soc. Sec.*, No. 11-14596, 2013 WL 766180, at *7 (E.D. Mich. Feb. 4, 2013) (Hluchaniuk, M.J.) (citing *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995)), *report and recommendation adopted*, No. 11-14596-DT, 2013 WL 773017 (E.D. Mich. Feb. 28, 2013) (Cleland, J.)). *See also Henderson v. Comm'r of Soc. Sec.*, No. 14-12675, 2015 WL 2063096, at *2 (E.D. Mich. May 4, 2015) ("[A] plaintiff cannot simply claim that the ALJ erred while leaving it up to the Court to scour the record to support this claim.") (quotation marks and citation omitted). "And, the court is not obligated to make plaintiff's case for [her] or to 'wade through and search the entire record' for some specific facts that might support [her] motion." *Hayes*, 2013 WL 766180, at *7 (quoting *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)).

Second, Plaintiff's offer of her own testimony and diagnosis of centralized pain syndrome as support for her argument that the ALJ erred by failing to find as

11

an MDI her fibromyalgia (ECF No. 17, PageID.2772-2773) is insufficient. Again, an MDI is an impairment that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. "Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable source," rather than a claimant's "statement of symptoms, a diagnosis, or a medical opinion[.]" *Id*. *See also Tolbert v. Comm'r of Soc. Sec.*, No. 11-12059, 2012 WL 4176876, at *4 (E.D. Mich. Aug. 27, 2012), *report and recommendation adopted*, 2012 WL 4165649 (E.D. Mich. Sept. 18, 2012) ("[A] diagnosis establishes a medically determinable impairment only where it is supported by objective medical evidence.").

Third and finally, Plaintiff fails to even assert the existence of the third element in the 2010 ACR Criteria—evidence that other disorders that could have caused the alleged repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. SSR 12-2p, 2012 WL 3104869, at *3. Thus, as Plaintiff is required to meet all three elements, her challenge at Step 2 fails.

> **2. The Court should find that Plaintiff has failed to demonstrate error with the ALJ's decision to label her carpal tunnel syndrome a non-severe impairment**

Plaintiff's next argument, that the ALJ erred by labeling her carpal tunnel syndrome as a non-severe impairment, also fails.

12

Step 2 requires an ALJ to determine if a claimant suffers from any severe impairments. 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment is considered severe if it "significantly limits your physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at this step when medical evidence establishes only a *slight abnormality* or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered . . . ." SSR 85-28, 1985 WL 56856, at *3 (emphasis added).

"In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). In other words, the Step 2 severity analysis is only a threshold determination. Sixth Circuit precedent readily establishes that failure to find an impairment severe at Step 2 of the sequential analysis is not reversible error if the ALJ found another impairment severe and thus continued with the five-step evaluation. *See, e.g., Fink v. Astrue*, 253 F. App'x 580, 583-84 (6th Cir. 2007); *Anthony*, 266 F. App'x at 457. Thus, "any alleged omission from the list of severe impairments does not undermine the ALJ's decision" so long as the ALJ considers Plaintiff's "severe and

13

nonsevere impairments in the remaining steps of the sequential analysis." *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F.Supp.2d 792, 822-23 (E.D. Mich. 2013) (quotation marks and citation omitted). "The fact that some of [the plaintiff's] impairments were not deemed to be severe at step two [may be] legally irrelevant." *Anthony*, 266 F. App'x at 457.

Here, ALJ Ashford found Plaintiff's carpal tunnel non-severe because there was no evidence that the condition had more than a minimal limitation on her ability to perform work-related activities. (ECF No. 13, PageID.1395.) In one perfunctory paragraph, Plaintiff argues that the ALJ erred because she was diagnosed with bilateral carpal tunnel syndrome, and "if the [ALJ] included these conditions in regards to the severe impairments which he considered he would have determined that based on the nature of these conditions [she] would not be able to engage in substantial gainful activity." (ECF No. 17, PageID.2773-2774.) However, even if the Court does not deem this issue waived based on the insufficiency of the briefing, *McPherson*, 125 F.3d at 995-96 – and it should – the argument still fails. Diagnosis alone does not establish severity. *Higgs*, 880 F.2d at 863. It is Plaintiff's burden alone to do so. *Walters*, 127 F.3d at 529. Further, any error would be harmless, as the ALJ considered other impairments severe, and continued with the sequential evaluation, specifically considering Plaintiff's carpal tunnel and incorporating associated limitations into the RFC. (*See* ECF No. 13,

14

PageID.1404.)  And she offers nothing to convince the Court that she should be entitled to a more restrictive RFC.  *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity.").

### 3. The Court should find no error in the ALJ's evaluation of Plaintiff's subjective symptoms

The Court should also find no error in the ALJ's assessment of Plaintiff's subjective symptoms.

To determine whether a claimant is disabled, an ALJ must consider all of a claimant's symptoms and the extent to which those symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(a), (c); SSR 16-3p, 2017 WL 5180304, at *2.  This involves a two-step process.  First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain."  SSR 16-3p, 2017 WL 5180304, at *3; *see also* 20 C.F.R. § 404.1529.  "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ."  SSR 16-3p, 2017 WL 5180304, at *3.

15

Here, the ALJ laid out the above standard and followed the two-step process, outlining Plaintiff's subjective statements regarding her symptoms as well as the medical evidence of record, as provided above, but ultimately determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (ECF No. 13, PageID.1400.) And Plaintiff's arguments, such as they are, establish no error in the ALJ's analysis.

Plaintiff asserts, in total, that the ALJ erred because she suffered from numerous underlying conditions fully documented in the record, including chronic paroxysmal hemicrania, and is required to undergo greater occipital nerve blocks every four to six weeks to obtain relief. (ECF No. 17, PageID.2774-2775.) However, the ALJ explicitly discussed Plaintiff's condition, as well as the nerve blocks in his RFC analysis (ECF No. 13, PageID.1399-1400), and Plaintiff offers no argument or specific citation to the record to convince the Court that the ALJ should have imposed a more restrictive RFC than he did on the basis of these circumstances. *Jordan*, 548 F.3d at 423.

## F.   Conclusion

Plaintiff has the burden of proof on statements of error. Plaintiff has not shown legal error that would upend the ALJ's decision, and the ALJ's decision is supported by substantial evidence. For the foregoing reasons, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 17), **GRANT** Defendant's motion for summary judgment (ECF No. 18), and **AFFIRM** the Commissioner of Social Security's decision.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 15, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE